UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAJUAN MICHAELCHIMA MURRAY,

        Plaintiff,                Case No. 1:15-cv-911

v.                                         Honorable Janet T. Neff

UNKNOWN SCHOOLEY et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff DaJuan Michaelchima Murray presently is incarcerated with the Michigan Department of Corrections (MDOC) at Chippewa Correctional Facility, though the events about which he complains occurred while he was incarcerated at Michigan Reformatory (RMI) and Oaks Correctional Facility (ECF). Defendants are MDOC employees at these two facilities. The RMI defendants are: Deputy Warden (unknown) Schooley, Resident Unit Manager (RUM) (unknown) Prince, Grievance Coordinator K. Miller, and Resident Unit Officer (unknown) Williams. The ECF defendants are: Warden (unknown) Gidley, Warden T. Mackie, and Grievance Coordinator T. Bassett.[1]

According to the complaint, Plaintiff was housed at RMI on October 28, 2014, when MDOC staff informed him that he was being moved to segregation for a major misconduct. Plaintiff secured his property in a padlocked footlocker inside his cell. Officer Williams packed his property and was the last person known to be in possession of Plaintiff's music player, watch, hair dryer, surge protector, and personal underwear, before these items were either lost or destroyed. Plaintiff contends that he did not receive an inventory of his property from Williams for several days, in violation of MDOC policy. Plaintiff sent a grievance regarding his property to Grievance Coordinator Miller, along with a request for a "DMTB-1104 form," which is used for submitting a claim to the state administrative board for the loss or destruction of property by an MDOC

---

[1] Bassett is named in an amendment to the complaint. (Mot. to Add T. Bassett to Def. List, ECF No. 4.) Because Plaintiff is permitted to amend his complaint once as a matter of course before service on Defendants, the Court will grant the motion.

employee. (Compl., ECF No. 1, PageID.5.) Plaintiff never received the form despite several requests for it.

Plaintiff further contends that he was placed in segregation without receiving a written statement of the reasons for his placement or a hearing or other opportunity to respond to the misconduct that was the basis for his placement. A MDOC hearings handbook allegedly provides that prisoners placed in segregation must be reviewed for a major misconduct within 24 hours. More than 24 hours after his placement, Plaintiff asked Defendant Prince if he could be released. After two days in segregation, Plaintiff asked Defendant Schooley if he could be released. Neither Schooley nor Prince released him. Schooley did nothing. Officer Prince allegedly lied to an investigator about the issue, saying that the placement was valid.

Plaintiff also complains about the conditions of his confinement in segregation. He contends that he was not given his Bible or his "daily bread" pamphlet, which prevented him from engaging in his daily religious practices and studies. (*Id.*) He was not permitted to access books that are designated for use by prisoners in segregation. He was subjected to a "smokey atmosphere" on one occasion due to nearby construction, which was a problem for him because he has asthma. (*Id.* at PageID.6.) In addition, Defendant Prince denied him recreation from October 28 to December 3, 2014, until Plaintiff was transferred to ECF.

Plaintiff asserts that all grievances filed by prisoners in segregation go through Defendant Prince. Twice, Plaintiff attempted to file a grievance on Schooley and Prince regarding his placement in segregation, but the grievances disappeared. Shortly after Plaintiff's second attempt, Schooley transferred Plaintiff to ECF, a "region one disciplinary facility." (*Id.* at PageID.7.)

After Plaintiff filed a third grievance about the issue, Miller permitted Schooley to respond to and reject the grievance, in violation of MDOC policy. Following Plaintiff's transfer, Warden Gidley and her successor, Warden Mackie, denied Plaintiff "rights and luxuries" given to other prisoners, including "phone calls and day room after 8:45 pm, the purchase of an instrument, a music room, movies, video games, lifer programs, and participation in any self betterment programs." (*Id.* at PageID.8.) Gidley denied Plaintiff movies and the purchase of an instrument; Mackie allowed these, but refused to allow Plaintiff to purchase an electric guitar and amp, which are allowed elsewhere.

In the motion to add Defendant Bassett (ECF No. 4), Plaintiff supplements his complaint with allegations that Bassett improperly permitted ECF Warden Mackie to respond to a grievance that was filed against Mackie.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Deputy Warden Schooley

#### 1. Segregation

Plaintiff contends that Schooley refused to release him from segregation. Plaintiff contends that he should have been released because a MDOC handbook requires that prisoners placed in segregation are to receive a misconduct hearing within 24 hours. Schooley's refusal to release Plaintiff does not state a claim.

The Constitution does not require prison officials to provide notice or a hearing in connection with a decision to place a prisoner in segregation. The Due Process Clause does not

protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995). Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). It is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, or confinement in segregation for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). Plaintiff does not allege facts indicating that his placement was atypical and significant. Consequently, the Constitution did not require prison officials to provide

a hearing to Plaintiff, let alone a hearing within 24 hours of his placement in segregation. Likewise, it did not require Schooley to release Plaintiff after he did not receive such a hearing.

Even assuming that Schooley's actions conflicted with prison policy, Plaintiff does not state a claim under § 1983. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

### 2. Prison transfer

Plaintiff claims that Schooley transferred him to another prison facility shortly after he filed a second grievance against him. Plaintiff contends that the transfer decision was retaliatory because it was motivated by Plaintiff's grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). However, Plaintiff has not alleged an adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) ("As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse."); *Hermansen v. Ky. Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (transfer from one prison to another is not adverse); *see also Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) (collecting cases). If, however, a "foreseeable consequence" of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an adverse action. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an adverse action, where it resulted in the plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney). In addition, transfer to an area of the prison used to house mentally-disturbed inmates, *Thaddeus-X*, 175 F.3d at 398, or transfer to more restrictive housing, *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010), could be sufficiently adverse to give rise to a retaliation claim.

Here, Plaintiff alleges that he was transferred from RMI to ECF, which Plaintiff describes as a "region one disciplinary facility." (Compl., ECF No. 1, PageID.7.) Plaintiff does not

allege any facts indicating that his confinement at ECF was more restrictive than his confinement at RMI. Both RMI and ECF house prisoners classified to either security level II or security level IV.[2]

Plaintiff contends that Schooley's transfer decision has been "compounded" by poor treatment that he has received from Defendants Gidley and Mackie at ECF. However, Plaintiff does not allege that this treatment was a foreseeable consequence of Schooley's decision. Consequently, Plaintiff does not state a retaliation claim, or any other claim under § 1983 against Defendant Schooley.

### B. RUM Prince

#### 1. Segregation

Defendant Prince also refused to release Plaintiff from segregation, which does not state a claim for the reasons set forth with respect to Defendant Schooley.

#### 2. Recreation

Plaintiff also contends that Prince denied him recreation for a little over a month, while Plaintiff was confined in segregation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in

---

[2] *See* description of Michigan Reformatory (RMI) on the MDOC's website, at http://michigan.gov/corrections/ 0,4551,7-119-68854_1381_1385-5369--,00.html (visited Nov. 12, 2015); *see also* description of Oaks Correctional Facility (ECF) at http://michigan.gov/corrections/0,4551,7-119-68854_1381_1385-55689--,00.html (visited Nov. 12, 2015).

the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). In addressing restrictions on yard time, this court has noted:

> Eighth Amendment standards entitle prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920-27 (6th Cir. 1985). Thus, the Sixth Circuit has held that some limitations on outdoor exercise may violate the Eighth Amendment. *See Rodgers v. Jabe*, 43 F.3d 1082, 1087–88 (6th Cir. 1995) (citing *Walker*, 771 F.2d at 927, and *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983)). Yet, the court has declined to find that minimum yard time is constitutionally required in all circumstances. *Rodgers*, 43 F.3d at 1087-88. Instead, the court has held that when yard time is extremely limited or denied altogether, the prison may be required to provide a legitimate penological purpose for the deprivation. *Id.* (citing *Patterson*, 717 F.2d at 289).

*Grzelak v. Ballweg*, No. 2:14–cv–31, 2014 WL 5101333, at *3 (W.D. Mich. Oct. 10, 2014) (quoting *Davis v. Berghuis*, 2012 WL 3116360, *8 (W.D. Mich., July 31, 2012)).

In a case similar to this one, the United States District Court for the Eastern District of Tennessee stated:

> Although "total or near total deprivation of exercise or recreational opportunity, without penological justification violates the Eighth Amendment guarantees[,]" *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983), Plaintiff does not claim he was totally denied outdoor or indoor recreation as he does not allege he was not taken "to the yard" at any time during this time period or that he was prevented from running in place, doing push-ups, sit-ups, or other exercises in his jail cell or elsewhere in the jail facility. Rather, he simply states he had "loss of recreation" for over a month.

*Deleon v. Hamilton Cnty. Sheriff's Dep't*, No. 1:12–CV–68, 2012 WL 3116280, *17 (E.D. Tenn., July 31, 2012). Like the plaintiff in *Deleon*, Plaintiff does not contend that he was denied opportunity for exercise. Instead, he merely alleges that he was not permitted to attend "recreation" for a little over a month. (Compl., PageID.6.) As in *Deleon*, this is insufficient to state a claim. *See* 2012 WL 3116280, at *11; *see also Grzelak*, 2014 WL 5101333, at *4 (allegation that prisoner was allowed to exercise only six times in 12 months, without more, is insufficient to state a claim). Plaintiff does not allege facts from which to infer that he was deprived of a minimal civilized measure of life's necessities or subjected to a serious risk of harm, let alone that Defendant was subjectively aware of this risk and ignored it.

### 3. Grievances

Defendant Miller allegedly lost or destroyed several of Plaintiff's grievances. Plaintiff has no due process right to obtain a response to his grievances. Courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,*

461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Because Plaintiff has no liberty interest in the grievance process, Defendant's interference with that process did not deprive him of due process.

Moreover, Defendant's actions did not prevent Plaintiff from pursuing his grievance. When a prisoner does not receive a timely response to a grievance, he may file a Step II grievance directly with the prison grievance coordinator. MDOC Policy Directive 03.02.130 ¶¶ T, BB (effective July 9, 2007). In other words, Plaintiff could have pursued his grievance even if it was destroyed by Prince. Thus, Prince's actions did not implicate Plaintiff's constitutional rights.

### 4. Other conditions

Plaintiff also complains that he was not permitted to use books or receive his personal property while he was in segregation. He does not allege that Defendant Prince (or any of the other defendants) were aware of or responsible for this condition, however. Consequently, Plaintiff does not state a claim against Defendant Prince.

### C. Grievance Coordinator Miller

Defendant Miller allegedly failed to send Plaintiff a form for filing a property-loss claim. These facts do not state a claim. Plaintiff does not have a constitutional right to obtain forms from prison officials for pursuing property-loss claims. Even if Miller was required to provide one under MDOC policy, a failure to comply with prison policy does not state a claim under § 1983, as indicated above with respect to Defendant Schooley.

Moreover, Defendant Miller's failure to provide a form could not have prevented Plaintiff from pursuing his claim, because MDOC policy provides that such a claim must be filed "[w]ithin 7 calendar days after *receiving* the form." MDOC Policy Directive 03.02.131 ¶ D

(effective Oct. 21, 2013) (emphasis added). If Plaintiff properly requested a form but never received one, then he has not lost the opportunity to file a timely claim.

Plaintiff also contends that Miller improperly allowed Schooley to respond to a grievance. As Plaintiff has no right under the Constitution to a particular grievance procedure, and cannot assert a § 1983 claim based solely on a violation of prison policy, these facts do not state a claim. For the foregoing reasons, Plaintiff does not state a claim against Miller.

### D. Officer Williams

Defendant Williams allegedly failed to complete an inventory of Plaintiff's property and then lost or destroyed that property. Plaintiff ostensibly claims that he was deprived of property without due process. This claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). In addition, as Plaintiff is aware, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state remedy would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

### E. Wardens Gidley, Mackie

After Plaintiff transferred to ECF, he contends that Defendant Gidley and/or her successor, Defendant Mackie, denied him certain luxuries and opportunities available to other prisoners, such as movies, games, the opportunity to make phone calls and/or spend time in the day room after 8:45 pm, the ability to purchase an instrument, and certain forms of educational/rehabilitative programming. Plaintiff does not have a constitutional right to any of the foregoing. Indeed, the Eighth Amendment only guarantees access to the "minimal civilized measure of life's necessities," such as "food, medical care, or sanitation." *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Games, instruments, educational programs, and phone calls are not necessities like

food, medical care or sanitation, and their absence is not a condition that is "intolerable for prison confinement." *Id.*; *cf. Coleman v. Gov. of Mich.*, 413 F. App'x 866, 875 (6th Cir. 2011) (no constitutional right to access a television).

Plaintiff's assertion that the foregoing luxuries and opportunities are available to other prisoners impliedly raises an equal protection claim. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff has not alleged that he is a member of a suspect class. Nor has he alleged a deprivation of a fundamental right. Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has not alleged that he has been intentionally treated differently from other, similarly-situated prisoners. He merely alleges that other prisoners have received opportunities or items which are not available to him. Prison officials undoubtedly provide different privileges and

opportunities to different prisoners, depending on the circumstances. In the absence of any allegations indicating that Plaintiff was similarly-situated with the other prisoners who were being treated differently, his allegations are not sufficient to state an equal-protection claim.

### F. Grievance Coordinator Bassett

Defendant Bassett allegedly permitted Warden Mackie to respond to a grievance that had been filed by Plaintiff against Mackie, which was not permitted by MDOC policy. As indicated with respect to Defendant Schooley, § 1983 is addressed to violations of the Constitution; it does not provide redress for a violation of prison policy. Moreover, as indicated with respect to Defendant Prince, the Constitution does not require prison officials to provide an effective grievance procedure. Consequently, Plaintiff does not state a claim against Defendant Bassett.

### **Conclusion**

For the foregoing reasons, Plaintiff's motion to amend the complaint (ECF No. 4) will be granted. In addition, the complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated: December 2, 2015          /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge